Milford's Petition.

## MILFORD'S PETITION.

There is no fatal variance between a petition for the discontinuance of a highway, which describes it as laid out across a particular river, near a certain locality named, and the record of the laying out of said highway, which describes it as laid out across the same river near the same locality, but designates the locality as equally well known by another name also, as by that set forth in the petition.

Nor is there any such fatal variance between such petition which describes the highway as laid out by the Court of Common Pleas, and the record of the proceedings of the town in relation to the discontinuance, wherein it is described as having been laid out by the road commissioners.

A petition for the discontinuance of a highway need not describe it by termini, courses and distances, metes and bounds, following the exact description of the laying out; it is sufficiently certain, if, by clear reference

to the former proceedings, it enables the court and commissioners to know and understand, without possibility of mistake, what highway the town voted and now ask to have discontinued.

THE PETITION OF THE TOWN OF MILFORD, for the discontinuance of a highway, set forth that, "At the Court of Common Pleas, holden at Manchester, within and for said county, on the fourth Tuesday of October, A. D. 1854, a new public highway was laid out in said town of Milford, across Souhegan river, near Jones' corner, (so called) on the petition of Reuben Hutchinson and others.

"That said town of Milford, at a legal town meeting, duly called and holden for that purpose, on the 4th day of December, A. D. 1857, voted to discontinue said highway," &c.

"Wherefore the petitioners prayed," &c.

Said petition having been filed and entered at the February term, 1858, of the Court of Common Pleas for this county, the petitioners were ordered to notify all persons interested to appear at the April term, 1858, of said court, to show cause, &c., which order of notice having been complied with, Reuben Hutchinson, one of the original petitioners for said highway, appeared at said term, and objected that the petition be referred to the county commissioners, and moved that said petition be dismissed for the following reasons:

1. There never was such road laid out, as set forth in said petition.

2. The town of Milford never voted, as set forth in said petition.

3. Said petition is defective for uncertainty in describing the highway laid out and sought to be discontinued.

It appeared that a new public highway had been laid out in Milford, upon the petition of Reuben Hutchinson and others, across Souhegan river, near Jones' corner, or Jones' crossing, which report was accepted at said October term, 1854. Said highway is described by proper termini, courses

and distances, metes and bounds, in said report. Either party may refer to said report on file, and the records of the court, as a part of this bill of exceptions.

To show the vote of the town discontinuing said highway, the records from the town-clerk's office of the proceedings of a meeting of said town of Milford, holden upon the 4th day of December, 1857, were introduced, a portion of which record is as follows:

":ART. 3d. Upon the third article in the warrant it was voted to discontinue the road mentioned in said article, it being the road in said Milford laid out by the road commissioners, across Souhegan river, near Jones' corner, so called.

The article. in the warrant for said town-meeting was, "To see if the town will vote to discontinue the road in said Milford, laid out by the road commissioners across Souhegan river, near Jones' corner, so called."

The town also offered in evidence the affidavits of Wm. R. Wallace and S. K. Livermore, which are annexed, marked A and B, and made parts of the bill of exceptions.

Whereupon the court ordered said petition to be dismissed; to which order and ruling said town of Milford excepted. And said petition being dismissed, said town filed this bill of exceptions, which was allowed by the court.

(A.) I, WILLIAM R. WALLACE, of Milford, depose and say, that there are but three roads laid out across Souhegan river, in Milford. One is at Jones' corner, at the fordway, so called. One is at Milford village, between three and four miles from said fordway, and the other at the County bridge, so called, two hundred and four rods from said fordway. Said road across said river at said fordway is at what is called Jones' corner, and was laid out on petition of Reuben Hutchinson and others, in 1854, by the road commissioners. It is laid out directly across said

river, from the road upon the south bank of said river to the road upon the north bank of said river. No road has ever been laid out across said river nearer Jones' corner than the County bridge, as I have heard or known, and I have resided in said Milford for 30 years last past; nor has there, as I have heard or known, been any road laid out across said river, in said Milford, except the three above mentioned, at any time.

WM. R. WALLACE.

*Hillsborough ss.* : May 14, 1858. Then William R. Wallace made oath that the above affidavit, by him subscribed, is true.

Before me, B. WADLEIGH, *Justice of the Peace.*

(B.) I, SOLOMON K. LIVERMORE, of Milford, in the County of Hillsborough and State of New-Hampshire, depose and say, that for fifty-one years last past I have resided in said Milford. During that time no road has been laid out by the road commissioners or any committee of the court across Souhegan river, in said Milford, except the road at the fordway at Jones' corner, so called, laid out on petition of Reuben Hutchinson and others, in 1854. Beside this last named road there is no road across Souhegan river, in said Milford, except the County bridge and the bridge in Milford village, both of which were laid out before said Milford was incorporated as a town. This is according to my belief and best recollection.

SOLOMON K. LIVERMORE.

*Hillsborough ss. :* May 14, 1858. Then Solomon K. Livermore made oath that the above affidavit, by him subscribed, is true.

Before me, B. WADLEIGH, *Justice of the Peace.*

*C. R. Morrison*, for Milford, took the position that the road intended was sufficiently described and identified, and that therefore the ruling of the court below, dismissing the petition, was erroneous, and cited the following author-

ities: *Harvey* v. *Mitchell*, 31 N. H. (11 Foster) 575; *Doe* v. *Bower*, 3 B. & Ad. 453; *Hibbard* v. *Hurlburt*, 10 Vt. 173; *Keith* v. *Reynold*, 3 Greenl. 393; *Leavitt* v. *Towle*, 8 N. H. 96.

*Lull*, for the original petitioner.

FOWLER, J. The first objection to the validity of the petition for discontinuance, that there never was any such road laid out as is therein set forth, seems fully overthrown by the facts stated in the case itself. The petition describes the road as a new public highway, laid out in Milford by the Court of Common Pleas, October term, 1854, on the petition of Reuben Hutchinson and others, across Souhegan river, near Jones' corner, so called. The case finds that at that term of court a new public highway was laid out in Milford, on the petition of Reuben Hutchinson and others, across Souhegan river, near Jones' corner, or Jones' crossing, by the acceptance of the report of the board of road commissioners for that purpose. No material difference between the general description of the road laid out, in the petition and in the record of laying out, as stated in the case, or between the road as described and the road as actually established, has been attempted to be pointed out to us, nor have we been able to discover any. The only discrepancy apparent is, that, in the record as set forth, the place of crossing the Souhegan river is described as equally well known by the name of Jones' crossing as by that of Jones' corner, while the petition only designates it by the latter appellation, although the record clearly indicates, by using it first, that the latter is the more usual name of the locality. This seems to us a discrepancy without any substantial difference, and utterly unworthy of serious consideration.

The second objection, that Milford never voted, as set forth in the petition, does not appear to be sustained by

the facts of the case.   The petition alleges, in substance, that the town of Milford, at a legal meeting holden on the fourth day of December, 1857, voted to discontinue the new public highway laid out in said town by the Court of Common Pleas, October term, 1854, across Souhegan river, near Jones' corner, so called, on the petition of Reuben Hutchinson and others.   The case finds that the article in the warrant was, " To see if the town will vote to discontinue the road in said Milford, laid out by the road commissioners across Souhegan river, near Jones' corner, so called," and the vote was to " discontinue the road in said Milford, laid out by the road commissioners across Souhegan river, near Jones' corner, so called," following the language of the article.   We suppose it was intended by this objection to insist that there is such a variance between the description of the highway proposed to be discontinued, as the same is set forth in the petition, and as it is described in the article in the warrant, and the vote of the town-meeting thereon, that it follows as a legal conclusion that they cannot be the same road.   But to this result we cannot assent.

The only difference between the description of the road in one case and in the other, which strikes us as susceptible of being considered in any way important, is, that in the warrant and vote it is alleged to have been laid out by the road commissioners; while in the petition it is said to have been established by the Court of Common Pleas. Now, as matter of fact, both allegations are strictly true. The highway was actually laid out by the road commissioners, while it was legally established by the judgment of the Court of Common Pleas, at the term mentioned in the petition, in accepting the report of the commissioners. Both descriptions of the manner in which the road was laid out are sufficiently true and sufficiently accordant with each other, to prevent any misunderstanding of the case by the court.   The road commissioners were the tri-

bunal that visited Milford, and with which its inhabitants and legal voters had actual acquaintance; and hence the propriety of describing the road, as laid out by them, in an article for the consideration of those voters, and in their action upon that article. But the law required the doings of the commissioners to be sanctioned by the court before they could be effective; and it was therefore more proper, in a legal proceeding before that court, to recognize its own action as legally decisive in establishing the road.

But it is farther insisted that the petition is defective in not fully describing the highway laid out and sought to be discontinued. By this we understand it to be contended that the petition for discontinuance should have described the highway, proposed to be discontinued, by metes and bounds, courses and distances, from one terminus to the other, following the exact and detailed description of the laying out, in the words of the field book of the surveyor employed by the commissioners. It seems only necessary, to show the absurdity of this position, to state the fact, that not unfrequently such detailed description occupies several pages of manuscript. If the petition must embrace it, the article in the warrant, and the vote of the town, should also contain the same identical description; and all for no practical purpose or result whatever. Not one in a hundred of the citizens of a town knows or cares any thing about the particular courses and distances, metes and bounds, of a new highway. Neither is the public in any way interested therein. They do not influence in any considerable degree the judgment of the court or commissioners. Their only use is to determine the exact line for the location and construction of the highway, when it comes to be built and fenced out. If, then, the article in the warrant so describe the highway proposed to be discontinued, that it is apparent the citizens must have understood distinctly the matter submitted for their con-

sideration, and the vote of the meeting shows clearly that they acted upon that matter, the subsequent petition for a discontinuance will be sufficiently certain, if, by an explicit reference to the proceedings in the laying out of the road and to the action of the town, it shall enable the court and commissioners to know and understand, without possibility of mistake, what highway the town voted and now ask to have discontinued. This may be done, and in practice almost uniformly is done, by some general description of the highway, rather than by a minute and detailed recital of the courses and distances, metes and bounds between its termini.

As, in our judgment, the objections taken to the petition in the case before us, should all have been overruled, the order of the court below dismissing the petition was improperly made, the exceptions thereto must be sustained, the order vacated, and the petition reinstated upon the docket.

*Exceptions sustained.*